```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA            :
                                    :
     -against-                      :
                                    :           MEMORANDUM OF LAW
CHRISTOPHER GUNN,                   :
                                    :               22-CR-314
            Defendant.              :
------------------------------------------------------------X
```

**Memorandum of Law In Support of**
**Motion to Transfer Venue**

                                  Allegra Glashausser
                                      Attorney for Mr. Christopher Gunn
                                  Federal Defenders of New York
                                  1 Pierrepont Plaza, 16th Floor
                                  Brooklyn, N.Y. 11201
                                  (212) 417-8739

Christopher Gunn is charged with threatening members of the United States Attorney's Office for the Eastern District of New York ("EDNY"), the same office that is prosecuting him in this case. In other words, the Brooklyn U.S. Attorney's Office is both the prosecutor and victim of the alleged crime. The charges relate to a video that includes a picture of the Brooklyn United States Attorney's Office, and mentions three current or former EDNY prosecutors by name. The case discussed in the video was one that took place in the EDNY in front of Judge Ann M. Donnelly, a respected member of the EDNY judiciary. Indeed, in June 2022, Judge Donnelly barred Mr. Gunn from the EDNY courthouse stating that he had "made threats" against her. (June 24, 2022, Memorandum from Judge Ann M. Donnelly). Because of this overlap between the facts of the case and this district's prosecutors and judiciary, Mr. Gunn would be prejudiced by his case proceeding in this district. Additionally, it would be more convenient and in the interests of justice to transfer the case to the Northern District of Illinois. Therefore, I respectfully request that this Court transfer venue under Federal Rules of Criminal Procedure, Rules 21(a) and (b). *See e.g. United States v. Turner*, No. CR.09-542, 2009 WL 2870627, at *1 (N.D. Ill. Sept. 8, 2009).

<u>Mr. Gunn's case should be transferred to avoid prejudice, for convenience, and in the interests of justice.</u>

The reasons a venue transfer is appropriate here are quite similar to those in *Turner*, 2009 WL 2870627, at *1, subsequent conviction later affirmed, 720 F.3d 411 (2d Cir. 2013). In *Turner*, the defendant was charged with making threats towards

1

specific Seventh Circuit judges. The district court transferred the venue from the Northern District of Illinois to the Eastern District of New York, explaining that, because the alleged threats involved members of the judiciary in the original district, the transfer would "best serve, not only Justice, but the appearance of Justice." *Id.* at *3. Mr. Gunn's case raises very similar facts: because the alleged threats involve members of the prosecutors in the original district, venue should be transferred to the Northern District of Illinois. This will best serve justice and the appearance of justice.

Federal Rules of Criminal Procedure 21(a) and (b) allow this type of venue transfer. Rule 21(a) provides that, "[u]pon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Fed. R. Crim P. 21(a). Rule 21(b) provides that a case may also be transferred from one venue to another "[f]or the convenience of parties and witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b). The Supreme Court has noted ten factors to be considered under Rule 21(b): (1) location of the defendants; (2) location of the possible witnesses; (3) location of the events likely to be at issue; (4) location of relevant documents and records; (5) potential for disruption of the defendants' businesses if transfer is denied; (6) expenses to be incurred by the parties if transfer is denied; (7) location of defense counsel; (8) relative accessibility of the place of trial; (9) docket conditions of each potential district; and (10) "any other special circumstance that might bear on the

desirability of transfer." *United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990), citing *Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240, 243-44 (1964) (factors referred to hereinafter as the "*Platt* factors"). "No one of these considerations is dispositive, and it remains for the court to try to strike a balance and determine which factors are of greatest importance." *Maldonado-Rivera*, 922 F.2d at 966 (cleaned up).

District courts have a great deal of discretion in deciding motions to change venue. *See Skilling v. United States*, 561 U.S. 358, 378, n. 11 (2010) (noting that as "the language of the Rule suggests, district-court calls on the necessity of transfer are granted a healthy measure of appellate-court respect."). *See also United States v. Stephenson*, 895 F.2d 867, 875 (2d Cir. 1990) (disposition of a Rule 21(b) motion is "vested in the sound discretion of the district court"); *United States v. Keuylian*, 602 F.2d 1033, 1038 (2d Cir. 1979) (same). And, "[v]enue statutes are to be liberally construed so as to minimize inconvenience to a defendant." *United States v. Amador Casanas*, 233 F. Supp. 1001, 1003 (D.D.C 1964) (noting that Rule 21(b) "will allow the selection of the place where the case is to be tried as the interest of justice indicates"); *United States v. Benjamin*, 623 F. Supp. 1204, 1211 (D.D.C. 1985) (citing *Casanas*, transferring venue based on *Platt* factors). "It is enough if, all relevant things considered, the case would be better off transferred to another district." *In re Blasimo* 68 F3d 185, 187 (7th Cir. 1995). *Accord* § 345 Transfer in the Interest of Justice—Standard for Transfer, 2 Fed. Prac. & Proc. Crim. § 345 (4th ed.).

3

### A. Mr. Gunn would be prejudiced by his case being tried by prosecutors who are members of the office that was the subject of the alleged threats.

That Mr. Gunn is charged with threatening the same people who are currently prosecuting him is prejudicial under Rule 21(a) and is also a "special circumstance" that "bear[s] on the desirability of transfer," under Rule 21(b). *See Platt*, 376 U.S. at 243-44. Having the alleged victims be members of the same office that is prosecuting Mr. Gunn creates at least the appearance of injustice. This is particularly true given that the allegations include an alleged threat to "storm" the EDNY United States Attorney's Office itself. Thus, the allegations contemplate that all of the prosecutors in the United States Attorney's Office are potential victims. This intersection between the prosecutors and the alleged victims implicates the rules of ethics for prosecutors and raises the specter of unfair prejudice towards Mr. Gunn.

Ethical rules for lawyers generally advise against any risk that a lawyer's "professional judgment" will be affected by other interests, including personal ones. *See e.g.,* NYSBA NY Rules of Professional Conduct, Rule 1.7, available at https://www.nycourts.gov/ad3/AGC/Forms/Rules/Rules%20of%20Professional%20Conduct%2022NYCRR%20Part%201200.pdf. Prosecutors have specific ethical duties and are generally charged with "serv[ing] the public" rather than representing a particular "witness or victim." *Id.* Standard 3-1.3. "Broadly construed, prosecutors' conflicts can arise not only out of personal and professional relationships and financial interests, but out of any personal belief, ambition, or institutional interest

4

that undermines the prosecutor's ability to pursue justice in a disinterested way." Bruce A Green & Rebecca Roiphe, "Rethinking Prosecutors' Conflicts of Interest," 58 B.C.L. Rev. 463, 465-66 (2017). Additionally, ethical rules suggest that the prosecutor should avoid the "prospect of having to testify personally" in their case. *See e.g.* ABA Criminal Justice Standards, Prosecution Function, Standard 3-3.4 (f), "Relationship with Victims and Witnesses," available at https://www.americanbar.org/groups/criminal_justice/standards/ProsecutionFunctionFourthEdition/.

 Here, the status of the EDNY prosecutors as both the people prosecuting Mr. Gunn and the alleged victims of his actions, at the least, suggests a violation of these ethical rules in a way that could prejudice Mr. Gunn. For example, that the prosecutors are also the alleged victims suggests that they may reasonably have more difficulty dispassionately evaluating the facts than an uninvolved prosecutor's office would have. *See* Green, 58 B.C.L. Rev. at 472-73 ("the prosecutor's own status as a victim of the defendant's crime might motivate that particular prosecutor to seek vengeance, whereas other prosecutors with no experience with the crime might be more measured."). This could cause the EDNY prosecutors' office to be less willing to reach a disposition favorable to Mr. Gunn through plea negotiations or more likely to request a greater sentence if he is convicted. Additionally, the government may seek to have the prosecutors mentioned in the video testify at any trial of Mr. Gunn about their reaction to the video and whether they truly felt threatened. This presents a

5

conflict between the EDNY United States Attorney's Office's duty to act as a disinterested prosecutor concerned with serving the interests of the public and justice, and the alleged victim-prosecutors' personal interests in convicting Mr. Gunn.

This potential for prejudice and conflicts of interest combined with the convenience in moving the case, discussed below, warrants a transfer to "avoid any appearance of injustice." *Turner*, 2009 WL 2870627, at *4 . *See also United States v. Komatsu*, 18-cr-671, Dkts. 28 & 33 (order transferring venue in the interest of justice after defense argued there was an "appearance" of "partiality" because facts of case involved the "credibility of the court security officers tasked with protecting" the judge in the original district).

### B. That Mr. Gunn is a long-term resident of Illinois weighs heavily in favor of transfer.

Mr. Gunn lives with his partner and two minor children in the Northern District of Illinois. His elderly mother, sister, nieces and nephews all live in the same neighborhood. He has lived in Illinois his whole life. "[W]henever possible, courts should try defendants where they reside." *United States v. Flom*, No. 14-CR-507 RRM, 2015 WL 6506628, at *3-4 (E.D.N.Y. Oct. 27, 2015) (internal quotation marks omitted) (noting that this is a "matter of policy"). District courts, therefore, grant changes of venue motions when the defendant, like Mr. Gunn, lives out of the charging district. *E.g., United States v. Fiorentino*, No. CR 13-0338 SJF, 2014 WL 108415, at *8 (E.D.N.Y. Jan. 6, 2014) (Rule 21(b) venue motion granted to SDFL;

defendant lifelong resident of Florida, where he cared for his elderly and ill mom); *United States v. Prescott*, No. 90 CR 70, 1990 WL 127577, at *3 (E.D.N.Y. Aug. 28, 1990) (transfer of venue granted; noting that the "defendants' home state of Louisiana is not only more convenient but is integrally connected to the crimes charged"). Thus, Mr. Gunn's residence should weigh heavily in favor of a venue transfer.

Additionally, Mr. Gunn's location in Illinois is also relevant to other *Platt* factors. Factor 4 addresses the location of relevant documents and records, while factor 7 addresses the location of defense counsel. Although in many cases today, the location of the discovery would not be particularly relevant, it is relevant in this case because of Mr. Gunn's bond conditions. *Cf United States v. Flom*, No. 14-CR-507 RRM, 2015 WL 6506628, at *6 (E.D.N.Y. Oct. 27, 2015) (noting that, normally, the location of documents is no longer a significant factor "given the conveniences of modern transportation and communication"). Under Mr. Gunn's current bond conditions, he cannot use the internet, is unable to possess items that are protected discovery, and does not have access to a computer. The discovery in his case, however, is largely electronic, and includes, *inter alia*, approximately 440 videos, many of which are well over an hour long. If Mr. Gunn's case were in the Northern District of Illinois, he would be appointed a Federal Defender in Chicago, and would be able to easily go to their offices to review the electronic discovery on their computers. This ability for Mr. Gunn to review his discovery at the office of his defense team is crucial to his defense. Mr. Gunn is uniquely qualified to explain the dense content of these

7

numerous hours of videos, highlighting the most pertinent videos for his defense, and culling videos that are less relevant. Even if each video were only one hour (and many are longer), it would take approximately 55 uninterrupted eight-hour days to watch all of the videos just once. If Mr. Gunn were able to do this painstaking discovery review in the same office as his defense team, he would be able to contemporaneously provide relevant context to his defense team. The defense will be significantly hampered if Mr. Gunn is unable to do this review with his defense team.

Mr. Gunn's location is also relevant to *Platt* factor 6, expenses to be incurred by the parties if transfer is denied: His current counsel, located in Brooklyn, New York, will be unable to do this contemporaneous discovery review of these hours of videos with Mr. Gunn without significant expense and hardship to counsel's other clients (who are based in New York) and family. To do this type of discovery review with Mr. Gunn, New York defense counsel would need to travel to Illinois likely numerous times and remain there for days or weeks to facilitate Mr. Gunn's discovery review. Additional expenses would also be incurred in the event of a trial, as Mr. Gunn would need to travel to New York and have lodging here. These unnecessary expenses would all be avoided if his case was transferred.

  C. <u>At this stage in the case, the prosecution and defense could be transferred to Chicago efficiently.</u>

A Northern District of Illinois prosecutor and federal defender could efficiently take up this case. I understand that the assigned AUSA has just left the Eastern

8

District of New York office; a new prosecutor just submitted a notice of appearance in Mr. Gunn's case yesterday evening, on October 27. Thus, no matter the outcome of this motion, a new prosecutor will be representing the government in this matter. On the defense side, the Federal Defenders in Chicago represented Mr. Gunn at his initial appearance; there is no reason they could not continue to do so going forward. The bulk of the discovery was just provided to current defense counsel on October 11, 2022, and Federal Defenders' technology personnel are still working to get it into a format for the defense team to review. Thus, it is early enough in the case that it would be no more efficient for current counsel to continue than to transfer the case back to previous counsel in Chicago.

Many of the other *Platt* factors are not particularly relevant in this case: The charged crime relates to an on-line video; thus the location of the "events" does not favor a particular district. *See e.g., Flom*, 2015 WL 6506628, at *6 (noting that because the "criminal activity alleged in this case was interstate in scope" the location of events at issue did not favor a particular outcome). This is also not a case that appears to present an issue related to the location of civilian witnesses, as the allegations relate to on-line activity. Indeed, the only civilian witness noted at this stage is a person called "individual-1" in the complaint. Counsel is unsure in what district this person lives, and has no reason to believe it would be any more difficult for that person to travel to a trial in Chicago than a trial in New York. Similarly, the "accessibility" and

9

"docket conditions" of both potential districts in Brooklyn and Chicago are equivalent.

*   *   *

Here, in this unusual case, there are real concerns about prejudice and the appearance of prejudice by Mr. Gunn being tried and prosecuted by the same office that he allegedly threatened. Additionally, that Mr. Gunn lives in the Northern District of Illinois and would be able to access his discovery with an Illinois-based federal defender team – something he is unable to do now, at the detriment to his ability to defend himself – strongly weighs in favor of transfer. This case is in the beginning stages, with a new prosecutor just having submitted a notice of appearance to the Court and defense counsel having recently received a large quantity of discovery; it is at a stage when it can be transferred without the need for the prosecution and defense teams in the new district to replicate work. Your Honor has considerable discretion to grant Mr. Gunn's motion to transfer venue and should do so.

Respectfully Submitted,<br>
/s/<br>
Allegra Glashausser<br>
Assistant Federal Defenders<br>
October 28, 2022