FTB:MWG
F. #2022R00544

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

       - against -                             Docket No. 22-CR-314

CHRISTOPHER GUNN,

             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - -X

## THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION TO TRANSFER VENUE

                                            BREON PEACE
                                            UNITED STATES ATTORNEY
                                            Eastern District of New York
                                            271 Cadman Plaza East
                                            Brooklyn, New York 11201

Michael W. Gibaldi
Assistant U.S. Attorney
    (Of Counsel)

TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 1

I. RELEVANT FACTUAL BACKGROUND ................................................................. 1

II. APPLICABLE LAW.................................................................................................... 2

III. THE COURT SHOULD DENY THE DEFENDANT'S TRANSFER MOTION ....... 4

CONCLUSION................................................................................................................... 10

PRELIMINARY STATEMENT

On July 12, 2022, a grand jury returned an indictment charging the defendant Christopher Gunn with one count of transmitting a threat to injure three individuals, in violation of 18 U.S.C. § 875(c). The charges arise out of the defendant's threats of violence against three then-Assistant United States Attorneys (identified in the indictment as Jane Doe 1, Jane Doe 2, and Jane Doe 3, respectively), who were responsible for the prosecution of Robert Sylvester Kelly, also known as "R. Kelly."

Given that the defendant directed his threats at three individuals located in Brooklyn, New York, in connection with an ongoing criminal prosecution in this district, there can be no real dispute that venue in the Eastern District of New York is proper. Nevertheless, the defendant moves to transfer venue to the Northern District of Illinois, pursuant to Federal Rule of Criminal Procedure 21, on the basis of both alleged prejudice and the interests of justice. For the following reasons, the defendant has failed to carry his burden to establish that a transfer of venue is warranted, and the Court should deny the motion.

I. RELEVANT FACTUAL BACKGROUND

This case is related to the government's prosecution of R. Kelly in the Eastern District of New York. See United States v. Kelly, No. 19-CR-286 (AMD) (E.D.N.Y.) ("Kelly"). Jane Doe 1, Jane Doe 2, and Jane Doe 3 were the Assistant United States Attorneys ("AUSAs") responsible for the prosecution of the Kelly case, which received extensive media coverage.[1] On September 27, 2021, a jury convicted Kelly of racketeering predicated on criminal conduct

---

[1] Each of the three AUSAs has since left the U.S. Attorney's Office for other employment.

including sexual exploitation of children, forced labor, and Mann Act violations. (See Compl. ¶ 3.)

Shortly after the verdict in Kelly, on or about October 4, 2021, the defendant Christopher Gunn published a live video via YouTube concerning the Kelly case. In the video, Gunn stated, in relevant part, that "if Kellz [Kelly] goes down, everybody's going down." Gunn posted the location of the United States Attorney's Office for the Eastern District of New York ("USAO-EDNY") and said, "You see this building right here? That building is located right outside of the courthouse where R. Kelly was being prosecuted at. It's the first building on the corner. That is the United States federal prosecution office." (Compl. ¶¶ 6-7.) Gunn then stated, "That's where they at. That's where they work at . . . We're going to storm they office. We're gonna storm they office. We going to storm [Jane Doe 1], [Jane Doe 2], and [Jane Doe 3]. We're going to storm they office." (Id. ¶ 8.) After saying that he was going to "storm" the three AUSAs on the Kelly case, Gunn added, "If you ain't got the stomach for the shit we bout to do, I'm asking that you just bail out." Gunn then posted a clip from the film Boyz n the Hood, which shows four men riding in a vehicle armed with a firearm. (Id.)

II. APPLICABLE LAW

Federal Rule of Criminal Procedure 21(a) provides that, upon a motion by the defendant, a district court must transfer a proceeding to another district "if the court is satisfied that there exists in the district where the prosecution is pending so great a prejudice against the defendant that the defendant cannot obtain a fair and impartial trial at any place fixed by law for holding court in that district." Fed. R. Crim. P. 21(a). Transfer of venue under Rule 21(a) is reserved for "extraordinary circumstances." United States v. Awadallah, 457 F. Supp. 2d 246, 250 (S.D.N.Y. 2006); see also Skilling v. United States, 561 U.S. 358, 378 (2010) ("The Constitution's place-of-trial prescriptions, however, do not impede transfer of the proceeding to a

different district at the defendant's request if extraordinary local prejudice will prevent a fair trial."). "In order to prevail on a motion under Rule 21(a), the defendant must show 'a reasonable likelihood' that prejudice in a particular venue 'will prevent a fair trial.'" United States v. Shea, No. 20-CR-412 (AT), 2022 WL 4298704, at *3 (S.D.N.Y. Sept. 19, 2022) (quoting United States v. Maldonado-Rivera, 922 F.2d 934, 966-67 (2d Cir. 1990)).

Apart from circumstances requiring a transfer of venue due to extreme prejudice, pursuant to Federal Rule of Criminal Procedure 21(b), a district court may transfer venue "to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b). In deciding a motion under Rule 21(b), district courts consider the following ten factors set forth in Platt v. Minn. Mining & Mfg. Co., 376 U.S. 240, 243-44 (1964):

> (a) location of the defendants;
> (b) location of the possible witnesses;
> (c) location of the events likely to be at issue;
> (d) location of relevant documents and records;
> (e) potential for disruption of the defendants' businesses if transfer is denied;
> (f) expenses to be incurred by the parties if transfer is denied;
> (g) location of defense counsel;
> (h) relative accessibility of the place of trial;
> (i) docket conditions of each potential district; and
> (j) any other special circumstance that might bear on the desirability of transfer.

Maldonado-Rivera, 922 F.2d at 966 (citing Platt, 376 U.S. at 243-44); see also United States v. Motz, 652 F. Supp. 2d 284, 290-91 (E.D.N.Y. 2009). Additionally, Rule 21(b) was amended in 2010 to "require[] the court to consider the convenience of victims—as well as the convenience of the parties and witnesses and the interests of justice—in determining whether to transfer all or part of the proceeding to another district for trial." Fed. R. Crim. P. 21, Advisory Committee's Note to 2010 Amendment. Therefore, since the 2010 amendment, courts also consider "the

3

location of the victims" in addition to the other Platt factors.  See, e.g., United States v. Yates, No. 19-CR-266 (AWT), 2020 WL 3316053, at *2 (D. Conn. June 18, 2020); United States v. Larsen, No. 13-CR-688 (JMF), 2014 WL 177411, at *4 (S.D.N.Y. Jan. 16, 2014).

"'As a general rule, a criminal prosecution should be retained in the original district' in which it was filed." Motz, 652 F. Supp. 2d at 291 (quoting United States v. U.S. Steel Corp., 233 F. Supp. 154, 157 (S.D.N.Y. 1964)).  "Accordingly, the burden of justifying a transfer under Fed. R. Crim. P. 21 rests with the defendant." Id.

III. THE COURT SHOULD DENY THE DEFENDANT'S TRANSFER MOTION

Although the defendant does not dispute that venue in the Eastern District is proper, the defendant invokes both Rule 21(a) and Rule 21(b) to seek a transfer of venue on the basis of the following facts and arguments: (1) the alleged victims were AUSAs in this district; (2) the defendant resides in the Northern District of Illinois; and (3) transfer of venue could otherwise be accomplished efficiently.  (See generally Def.'s Mot., ECF No. 27.)  None of these arguments—either alone or in combination—warrant the extraordinary remedy that the defendant seeks, and this case should remain in the Eastern District of New York.

First, the defendant cannot obtain a transfer of venue based on the fact that the victims in this case were AUSAs in the USAO-EDNY at the time of the charged crime.[2]  As an initial matter, the defendant cites no case, and the government is aware of none, holding that a

---

[2] Contrary to the defendant's suggestions, there is no allegation that the entire USAO-EDNY was the subject of the defendant's threat.  The defendant posted the location of the USAO-EDNY because, as he put it himself, "That's where they at.  That's where they work at." (Compl. ¶ 8.)  They defendant then stated that he and others were going to storm [Jane Doe 1], [Jane Doe 2], and [Jane Doe 3]." (Id.)  In context, it is clear that the defendant's threats of violence were directed specifically toward the three AUSAs on the Kelly case: Jane Doe 1, Jane Doe 2, and Jane Doe 3.

4

transfer of venue is required whenever a United States Attorney's Office prosecutes a case where the victim is one of its employees or former employees.

Moreover, while the defendant asserts that the USAO-EDNY has a conflict of interest in pursuing this prosecution, the law is clear that a United States Attorney's Office writ large cannot be disqualified from a case based on the conflict of a particular AUSA. Judge Nicholas G. Garaufis's decision in United States v. Basciano, 763 F. Supp. 2d 303 (E.D.N.Y. 2011), aff'd, 634 F. App'x 832 (2d Cir. 2015), makes this clear. In Basciano, the defendant was charged with racketeering, including a racketeering predicate act of soliciting the murder of an AUSA in the USAO-EDNY. The defendant moved to disqualify the entire USAO-EDNY because one of its own AUSAs was the defendant's intended victim. Judge Garaufis denied the motion and held that "[t]he disqualification of the entire U.S. Attorney's Office because [an AUSA] was the target of a crime would compromise the efficient administration of justice." 763 F. Supp. 2d at 313 (citing Grand Jury Subpoena of Ford v. United States, 756 F.2d 249, 254 (2d Cir. 1985)).[3] Judge Garaufis further observed that "'[e]very circuit court that has considered the disqualification of an entire United States Attorney's office has reversed the disqualification.'" Id. (quoting United States v. Bolden, 353 F.3d 870, 879 (10th Cir. 2003), and citing additional cases); see also Rodriguez v. United States, No. 14-CV-6134 (KAM), 2020 WL 7861383, at *22 (E.D.N.Y. Dec. 31, 2020) (citing Basciano for same proposition). As the Second Circuit has held, "[w]hile a private attorney's conflict of interest may require disqualification of that attorney's law firm in certain cases, such an approach is not favored when it comes to the office of a United States Attorney, or, a fortiori, to the Department of Justice as a whole." United

---

[3] In subsequent litigation, the racketeering count was dismissed on double jeopardy grounds.

5

States v. Hasarafally, 529 F.3d 125, 128 (2d Cir. 2008); see also United States v. Badalamenti, 794 F.2d 821, 828 (2d Cir. 1986) (affirming order denying motion for "unprecedented disqualification" of an entire United States Attorney's Office on the basis that certain members of that office were fact witnesses, as "[s]uch a claim ignores the distinction between government law offices and private attorneys"). Indeed, "[o]ne reason that disqualifying an entire prosecutor's office is strongly disfavored is that it implicates separation of powers concerns," because "Article II of the Constitution 'vests the Executive with substantial discretion in choosing when and how to prosecute cases.'" Basciano, 763 F. Supp. 2d at 313 n.7 (quoting Bolden, 353 F.3d at 877). Instead, "'the generally accepted remedy' for an asserted conflict is 'to disqualify a specific Assistant United States Attorney, not all the attorneys in the office.'" Id. (quoting Bolden, 353 F.3d at 879).

Here, none of the victims are part of the prosecution team in the instant case. In fact, none of the victims work for the USAO-EDNY anymore. Nor does the defendant allege that any of the AUSAs actually working on this prosecution have a conflict of interest. The defendant's assertions of prejudice amount merely to speculation that the USAO-EDNY may be "less willing to reach a disposition favorable to Mr. Gunn through plea negotiations or more likely to request a greater sentence if he is convicted." (Def.'s Mot. at 5.) The former claim presupposes without further explanation that the defendant's conviction on the sole charge in the indictment—either by his guilty plea or after a jury trial—would cause him unfair prejudice, and that he is instead entitled to a "favorable" disposition. The latter claim elides the fact that the Court, not the USAO-EDNY, imposes the sentence in the event of a conviction.

Under these circumstances, the law is clear that disqualification of the entire USAO-EDNY would be unwarranted. Indeed, the USAO-EDNY has prosecuted other cases

involving threats made against AUSAs or former AUSAs without even a suggestion of a conflict of interest. See, e.g., United States v. Mehmeti, No. 21-CR-530 (RJD) (E.D.N.Y.).[4] To hold otherwise would give a defendant a perverse incentive to threaten an individual AUSA as a means to remove the entire USAO-EDNY from a prosecution. Cf. In re Basciano, 542 F.3d 950, 957 (2d Cir. 2008) ("Requiring a judge to recuse himself because the defendant, in an attempt to change judges, has plotted or threatened to kill the judge would provide any defendant who wanted a new judge with an effective, if in some cases dreadful, method to achieve that end."). It follows that the defendant should not be able to obtain essentially the same remedy—removal of the entire USAO-EDNY from the case based on the conflict of interest of certain former AUSAs—under the guise of a Rule 21 venue transfer motion.[5]

---

[4] For instance, in Mehmeti, the USAO-EDNY prosecuted the defendant for threats made against former AUSAs of the USAO-EDNY. The defendant had posted to her Facebook account, in relevant part: "I want [JANE DOE 2], [JANE DOE 3] & this corrupted bytch [JANE DOE 1] to lose their jobs or else I will Str8 murder [JANE DOE 1] of the Eastern District of New York in Brooklyn! Bitch I know about 271 Cadman plaza East in Brooklyn, Red Hook headquarters in Brooklyn." Mehmeti Compl. ¶ 8, ECF No. 1. "JANE DOE 1" was a former AUSA in the USAO-EDNY who had participated in the prosecution of the defendant's brother, and "JANE DOE 2" was a former USAO-EDNY who had participated in the prosecution of the defendant's spouse. Id. ¶¶ 10-11.

[5] This case is distinguishable from United States v. Wright, 603 F. Supp. 2d 506 (E.D.N.Y. 2009), which concerned a motion to transfer venue of a case arising out of the defendant's physical attack on an AUSA during a sentencing hearing in Judge Block's courtroom. The USAO-EDNY voluntarily recused itself from the case, and the United States Attorney's Office for the Southern District assumed responsibility for the prosecution. 603 F. Supp. 2d at 507 n.1. The defendant then moved to transfer venue from this district to the Southern District of New York, and the government took no position on the motion. Id. at 507. Given that the USAO-EDNY had voluntarily recused itself, the crime itself occurred in the courthouse, witnesses to the crime worked in the USAO-EDNY and the courthouse, and the government had no objection to the motion, Judge Vitaliano transferred venue from this district to the Southern District of New York. See id. at 509. Here, by contrast, the USAO-EDNY has not recused itself from the case, the crime did not occur in the courthouse, the government does not expect to call any courthouse staff as witnesses in this case, and the government does oppose the defendant's motion.

Second, none of the other factors cited by the defendant warrant the extraordinary remedy of transferring this case to the Northern District of Illinois. The defendant's residence in that district is admittedly a factor that favors transfer of venue. See United States v. Estrada, 880 F. Supp. 2d 478, 482 (S.D.N.Y. 2012) (noting that the defendant's residence outside the prosecuting district "weighs in favor of transfer," but denying motion to transfer venue). "As the Supreme Court stated in Platt, however, a defendant's residence, standing on its own, 'has no independent significance in determining whether transfer to [a different] district would be 'in the interest of justice.'" United States v. Christian, No. 12-CR-041 (KBF), 2012 WL 1134035, at *1 (S.D.N.Y. Apr. 2, 2012) (quoting Platt, 376 U.S. at 245). Further, where "the trial is anticipated to be relatively short, that fact decreases the relative weight to be given to this factor." Yates, 2020 WL 3316053, at *3.

Here, the government anticipates that trial of this case would last no more than several days, as the indictment charges one crime based on one threatening video. Where trial is projected to last less than one week, courts have concluded that the burden of the defendant in having to travel to the prosecuting district carries less weight in a venue transfer analysis. See, e.g., Larsen, 2014 WL 177411, at *3 (denying motion to transfer venue and noting that the defendant's residence outside the district did "not weigh heavily in favor of transfer . . . , especially in a case that the Government projects to last only three to five days").

None of the other factors favor a transfer of venue. Indeed, many strongly favor retention of venue in this district. The victims reside in the New York City area. As for the location of potential witnesses and relevant documents, the law enforcement agents who investigated this case, and who have custody of the relevant documents and records, are located in New York, not Chicago. Moreover, as the defendant concedes, "the location of documents is

8

no longer a significant factor given the conveniences of modern transportation and communication." United States v. Flom, No. 14-CR-507 (RRM), 2015 WL 6506628, at *6 (E.D.N.Y. Oct. 27, 2015).[6] By contrast, the defendant does not identify any potential witnesses or relevant documents located in Chicago. Further, there is no dispute that the events at issue all occurred in the Eastern District of New York. The defendant is represented by an attorney with the Federal Defenders of New York in this district. And, as the defendant concedes, the accessibility and "docket conditions" of this district and the Northern District of Illinois do not weigh in favor of a transfer because they appear to be "equivalent" (Def.'s Mot. at 10).

---

[6] The defendant contends that his current bond conditions prevent him from communicating effectively with his New York-based counsel and reviewing relevant documents (by, for instance, reviewing discovery by video conference) because he is prohibited from using an internet capable device. (See Amended Bond ¶ 7(s), ECF No. 15.) The defendant's motion fails to acknowledge that this purported problem is entirely of his own making. On July 28, 2022, the Court amended the defendant's conditions of release to include a prohibition on using any internet capable devices after the government presented evidence that the defendant was posting videos to YouTube in which he appeared to threaten potential witnesses. In any event, the defendant retains the ability to communicate with defense counsel by other means, and if the defendant's current bond conditions truly pose a problem for the defendant's ability to review discovery with his attorney, then a motion to modify his bond would be a more appropriate—and less drastic—remedy than transferring this case to the Northern District of Illinois.

9

CONCLUSION

For the reasons set forth above, the Court should deny the defendant's motion to transfer venue.

Dated: Brooklyn, New York
November 10, 2022

                                                    Respectfully submitted,

                                                    BREON PEACE
                                                    UNITED STATES ATTORNEY
                                                    Eastern District of New York
                                                    271 Cadman Plaza East
                                                    Brooklyn, New York 11201

                          By:        /s/
                                                      Michael W. Gibaldi
                                                    Assistant United States Attorney
                                                    (718) 254-6067